David C. Potts, Bar #030550
JONES, SKELTON & HOCHULI P.L.C.
40 N. Central Avenue, Suite 2700
Phoenix, Arizona 85004
Telephone: (602) 263-4547
Fax: (602) 200-7829
dpotts@jshfirm.com

Attorneys for Defendant Chas Roberts Air Conditioning, Inc. dba Chas Roberts Air Conditioning & Heating

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Brandon Robinson,<br><br>                    Plaintiff,<br><br>v.<br><br>Chas Roberts Air Conditioning, Inc. dba Chas Roberts Air Conditioning & Heating,<br><br>                    Defendant. | No. CV-24-02774-PHX-MTL<br><br>**Defendant's Partial Motion to Dismiss Plaintiff's Second Amended Complaint** |

Defendant Chas Roberts Air Conditioning, Inc. dba Chas Roberts Air Conditioning & Heating ("Chas Roberts"), by and through counsel undersigned, hereby moves to dismiss Counts 1, 2, 3, 4, and 6 of Plaintiff's Second Amended Complaint.[1]

---

[1] The parties conferred regarding the bases for Defendant's Motion to Dismiss and subsequently filed a Joint Motion to Extend Time for Plaintiff to Amend Complaint and for Defendant to Respond to Complaint (Doc. 10). Plaintiff subsequently amended his complaint. *See* Second Amended Complaint (Doc. 13). However, the Second Amended Complaint, from Defendant's perspective, raised additional issues, as it became clear that Plaintiff was making a claim regarding the change to the bonus structure in 2018 that Defendant did not previously understand was part of Plaintiff's case. As such, counsel for Defendant reached out to Plaintiff's counsel on January 22, 2025, explaining the new issues for a 12(b)(6) motion introduced by the Second Amended Complaint. Counsel for defendant has not heard back and, given the deadline to respond to the Second Amended Complaint, is moving forward with this motion to dismiss. Defense counsel believes that these meet-and-confer efforts (through the meeting, the amendment of the Complaint, and the subsequent e-mail) satisfy the conferral requirement of Local Rule 12.

117694446.1

Almost all of Plaintiff's claims fail as a matter of law. First, Plaintiff makes various allegations going as far back as 2016 and specifically alleges that Chas Roberts discriminated against him and retaliated against him by changing the bonus structure in 2018, but any such claim is, on its face, time-barred. Second, Plaintiff fails to state a claim for retaliation under Title VII or § 1981 because the protected activity that forms the basis for those claims happened more than two years before the change to the allegedly retaliatory change to the commission structure. Third, Plaintiff fails to state a claim for race discrimination because, as he admits in his Second Amended Complaint, the change to the commission structure meant that all employees were treated the same and subject to the same commission structure. Fourth, Plaintiff fails to state a claim for FMLA interference because he admits that he was able to take FMLA leave and does not allege even discouragement from said leave. Fifth and finally, to the extent that Plaintiff alleges that he was "terminated" because of race discrimination or retaliation under Title VII, § 1981, or the FMLA, Plaintiff's claim fails, as he admits that the end of his employment was entirely due to his failure to accept the commission structure required of all employees at Chas Roberts.

The only relevant factual allegations Plaintiff makes are that he complained about a change to the bonus structure in 2021, that he took FMLA leave in 2023, and that the commission structure was changed in 2023. Under those allegations, Plaintiff fails to state a claim for anything other than FMLA retaliation (limited solely to the change in the commission structure), and the rest of Plaintiff's claims should be dismissed.

I.  **RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

This case arises out of Plaintiff Brandon Robinson's employment with Chas Roberts. Chas Roberts provides contracting services for the design, construction, and maintenance of heating and cooling services to residents and businesses in Arizona. *See* Second Amended Complaint (Doc. 13) at ¶ 7. Plaintiff is an African American male and

2

117694446.1

was employed as a Sales Consultant Associate with Chas Roberts from September 2015 to October 2023. *See* Second Amended Complaint (Doc. 13) at ¶¶ 6, 8, 9, 49.

### A. Timeline of Plaintiff's Employment[2]

Plaintiff alleges that in or around February 2016 he received a text message from a Chas Roberts Sales Manager that included a racial slur. *See* Second Amended Complaint (Doc. 13) at ¶ 14. He does not allege, though, that he raised any complaint with Chas Roberts about this in 2016.

In 2017, Chas Robert's bonus structure included a 1% bonus for any Sales Consultant who brought in $2,000,000 in revenue and a 0.5% bonus if the employee obtained $1,500,000 in revenue. *See* Second Amended Complaint (Doc. 13) at ¶ 16. Plaintiff claims he was the only one that reached the 1% bonus level before being informed in February 2018 that Chas Roberts changed the bonus structure, now requiring $2,000,000 in revenue for a 0.5% bonus and $2,500,000 in revenue for a 1% bonus. *See* Second Amended Complaint (Doc. 13) at ¶¶ 18–21. Plaintiff then alleges that, in February 2018, he complained to Chas Roberts about what he considered "differential treatment he received in comparison to his Caucasian coworkers." *See* Second Amended Complaint (Doc. 13) at ¶ 22.

Apparently, for the next three years, nothing happened. Then, in January 2021, Plaintiff met with Chas Roberts management to discuss the bonus structure. *See* Second Amended Complaint (Doc. 13) at ¶ 26. He alleges that he then "complained about the intentional disparate treatment against him based on race" and now, five years after the alleged act, "complained about the unlawful retaliation against him" for reporting the use of a racial slur. *See* Second Amended Complaint (Doc. 13) at ¶¶ 27–28. Plaintiff alleges

---

[2] Though Chas Roberts disputes much of what Plaintiff alleges, it nevertheless assumes Plaintiff's plausible allegations to be true for the purposes of this motion. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

117694446.1

that Chas Roberts admitted, in this meeting, that the bonus structure was changed to "specifically prevent Plaintiff from earning the 1% bonus."

Yet again, years passed where nothing happened. Then, in May 2023, Plaintiff was approved for leave under the Family Medical Act. *See* Second Amended Complaint (Doc. 13) at ¶ 30. His FMLA leave lasted until September 25, 2023. *See* Second Amended Complaint (Doc. 13) at ¶ 32.

When Plaintiff returned to work, he alleges that he was presented with a pay cut and a new commission structure. *See* Second Amended Complaint (Doc. 13) at ¶ 33. This new commission structure "took 3% off his bonus earning percentage" and that Plaintiff's Caucasian coworkers were not affected by the change in commissions structure because "they were still on the base commission model with no raise in their commission percentages." *See* Second Amended Complaint (Doc. 13) at ¶ 37. In other words: in those years where nothing allegedly happened, Plaintiff received increases in his commission percentages that no other employee received.

Plaintiff did not sign the new commission structure. Then, on October 2, 2023, Plaintiff was once again asked to sign the new commission contract, Plaintiff objected, and Chas Roberts informed Plaintiff that they "considered his failure to immediately sign…as a voluntary resignation." *See* Second Amended Complaint (Doc. 13) at ¶ 44.

Then – and only then – does Plaintiff allege that he "confronted Defendant about the unfair treatment and the disparate application of the 'new' commission structure had on him versus his other Caucasian coworkers." *See* Second Amended Complaint (Doc. 13) at ¶ 45. Given that he refused to agree to the new commission structure, Plaintiff's employment with Chas Roberts ended on October 2, 2023. *See* Second Amended Complaint (Doc. 13) at ¶ 49.

4

B.  **Procedural History**

On October 2, 2023, the same day his employment with Chas Roberts ended, Plaintiff filed a complaint with the Equal Employment Opportunity Commission and the Department of Labor. *See* Second Amended Complaint (Doc. 13) at ¶ 42. Plaintiff then filed his Complaint with this Court on October 13, 2024, alleging race discrimination and retaliation under § 1981 and Title VII, as well as retaliation under the FMLA. *See generally* Second Amended Complaint (Doc. 13).

II.  **LEGAL ARGUMENT**

The operative complaint in this case is Plaintiff's Second Amended Complaint. This is thus Plaintiff's third attempt to characterize the end of his employment in a way that entitles him to relief, and he still fails to do so. His Second Amended Complaint should be dismissed.

A.  **The relevant universe of facts in this case is limited to those acts that occurred in 2020 and later.**

As a preliminary matter, Plaintiff goes out of his way in his Second Amended Complaint to allege discrimination and harassment that is far outside what this Court can consider. Plaintiff concedes that he filed his Charge of Discrimination on October 2, 2023, and it is a matter of public record that he filed this lawsuit on October 13, 2024. Under 42 U.S.C. § 2000e-5(e), a party has three hundred days following an alleged unlawful employment practice to file a charge with the Equal Employment Opportunity Commission. The statute of limitations for a claim under § 1981 is, at most, four years. *See, e.g., Millia Promotional Services v. Arizona Department of Economic Security*, 650 F. Supp. 3d 814, 823–24 (D. Ariz. 2023) (holding that the statute of limitations for a § 1981 claim in Arizona is either four years or two years, depending on whether the claim was cognizable before the Civil Rights Act's 1990 amendments). And the statute of limitations for a claim under the Family Medical Leave Act is, at most, three years. 29 U.S.C. § 2617(c)(2). Given that the longest possible statute of limitations for any of Plaintiff's

5

claims is four years, anything that occurred before October 13, 2020 has limited relevance, at best, to Plaintiff's claims.

Yet Plaintiff spends paragraph after paragraph making salacious allegations about conduct that is far outside the scope of this case. Plaintiff alleges that a racial slur was used in a text message in 2016, that he was subject to a discriminatory change to the bonus structure in 2018, and that he complained of discrimination in 2018. *See, e.g.,* Second Amended Complaint (Doc. 13) at ¶¶ 14–24, 58 – 60, 79, 92–94, 105. These allegations are all, facially, outside the scope of any applicable statute of limitations, and these allegations should be disregarded in evaluating Plaintiff's Second Amended Complaint.

**B.  All of Plaintiff's claims related to the change in the bonus structure in 2018 should be dismissed because they are barred by the statute of limitations.**

In his Second Amended Complaint, Plaintiff for the first time alleges that "Defendant's decisions to reduce Plaintiff's commission earning percentage" – including the change in bonus requirements in 2018 – constitutes race discrimination or retaliation under 42 U.S.C. § 1981 and Title VII.[3] Any such claim based on a change to the commission or bonus structure in 2018 must be dismissed.

Under 42 U.S.C. § 2000e-5(e), a party has three hundred days following an alleged unlawful employment practice to file a charge with the Equal Employment Opportunity Commission. Plaintiff alleges his charge was filed on October 2, 2023. There is no doubt that any claim related to a bonus structure change in 2018 is time-barred.

The applicable statute of limitations for a § 1981 claim depends on whether the claim "was cognizable before the Act's 1990 amendments or only made cognizable by those amendments." *Millia Promotional Services*, 650 F. Supp. 3d at 823–24. Plaintiff's

---

[3] The Second Amended Complaint is careful to allege that the commission structure was changed in 2018 and that he was "informed" in 2021 "that the alterations were made specifically to prevent Plaintiff from earning the 1% bonus."

6

117694446.1

allegation that the change in bonus structure was discriminatory would fall squarely within the pre-1990 amendments definition of "making and enforcing contracts" because it pertains to contract formation. *Id.* at 824. The statute of limitations would, thus, be two years, since that is the statute of limitations for personal injury claims under Arizona law. *Id.*

Even if the statute of limitations were four years, though, the claim would still be barred. Though Plaintiff seemingly alleges that he did not know that there was an allegedly discriminatory motive until 2021, "it is plaintiff's knowledge of the actual injury that triggers accrual." *Id. Millia Promotional Services* dealt with this precise issue and held that the "later knowledge or belief that there was an allegedly discriminatory motive is irrelevant for determining when a claim accrues for purposes of the statue of limitations." As such, even with a four year statute of limitations, Plaintiff's claims based on the change to the bonus structure in 2018 fail.

As such, whether under Title VII or § 1981, Plaintiff's discrimination and retaliation claims based upon changes to the bonus structure in 2018 fail.

C. **Plaintiff's retaliation claims based on the end of his employment or the change to the commission structure in 2023 should be dismissed because there is no causal link between the alleged protected activity and the change in the commission structure.**

Any retaliation claim with respect to the 2023 change to the commission structure and the consequent end of Plaintiff's employment should be dismissed, too. To show a prima facie case of retaliation under § 1981 or Title VII, an employee must demonstrate that (1) the employee engaged in a protected activity, (2) the employer subjected the employee to an adverse employment action, and (3) a causal link exists between the protected activity and the adverse employment action. *Nilsson v. City of Mesa*, 503 F.3d 947, 954 (9th Cir. 2007). The causal link can be inferred from circumstantial evidence such as the employer's knowledge of the employee's protected activities and the proximity in time between the protected activity and the adverse employment action.

7

117694446.1

*Dawson v. Entek Int'l*, 630 F.3d 928, 936 (9th Cir. 2011). Causation will only be inferred from timing alone if the proximity is "very close[,]" *Clark Cnty. School Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001), such that the "adverse employment action follows on the heels of protected activity." *Villiarimo v. Aloha Island Air*, 281 F.3d 1054, 1065 (9th Cir. 2002).

As Plaintiff's Second Amended Complaint makes clear: at the time the commission structure was changed in September 2023, Plaintiff does not even allege that he made any complaint of race discrimination since January 2021. *See* Second Amended Complaint (Doc. 13) at ¶¶ 26, 33. This timing is not "very close," and it is not enough to create any inference of causation between the complaint and the change in the commission structure. *See, e.g., Breeden*, 532 U.S. at 273 – 274 (holding that a twenty-month gap between the alleged protected activity and an employee's termination "suggests, by itself, no causality at all.")

Because Plaintiff fails to allege a plausible causal link between his protected activity and alleged adverse employment action, he has failed to make a prima facie case of retaliation under both § 1981 and Title VII and those retaliation claims should be dismissed.

    D.    **Plaintiff fails to make a prima facie case of race discrimination.**

To establish a prima facie case of race discrimination under § 1981 or Title VII, Plaintiff must show: (1) he belongs to a protected class; (2) he performed his job satisfactorily; (3) he suffered an adverse employment action; and (4) he was treated differently than similarly situated employees who do not belong to the same protected class. *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018 (9th Cir. 2006). Moreover, where the same actor is responsible for taking both a favorable employment action towards an employee and later taking an adverse employment action, "a strong inference arises that there was no discriminatory action." *Coghlan v. American Seafoods Co. LLC*, 413 F.3d

117694446.1

1090, 1096 (9th Cir. 2005) (quoting *Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267 (9th Cir. 1996)).

Plaintiff attempts to suggest in his Second Amended Complaint that he was treated unfairly or poorly in a discriminatory fashion as compared to his Caucasian co-workers, but actually alleges – as he must – the opposite. As Plaintiff concedes, he was provided with a new commission structure that "was the same earning percentage structure that Plaintiff started with at the company" and that this "only disparately effected Plaintiff, as he was the only Sales Consultant that had received a raise in his commission percentages, above the standard commission percentages, due to his hard work and success in the company." *See* Second Amended Complaint (Doc. 13) at ¶¶ 33 – 37. In other words: Plaintiff concedes that, from the time he was hired until 2023, he received raises in his commission percentages *higher* than his Caucasian counterparts, and that Chas Roberts' attempts to put all employees on the same commission structure is the discriminatory act.

Given this, Plaintiff cannot establish a prima facie case of race discrimination. First and foremost, he cannot establish that he was "treated differently than similarly situated employees who do not belong to the same protected class" – indeed, Plaintiff's entire claim is that it was discriminatory for him to be treated the *same* as those who do not belong to the same protected class.

Moreover, the same actor inference applies and prevents Plaintiff from stating a claim for race discrimination. Plaintiff concedes that, since the start of his employment with Chas Roberts, he received raises in his commission percentages "above the standard commission percentages, due to his hard work and success in the company." The same people at Chas Roberts who provided Plaintiff with raises above and beyond those given to his Caucasian counterparts are the individuals who Plaintiff alleges discriminated against him through the change in the commission structure in 2023. The

117694446.1

same actor inference applies, and Plaintiff does not allege anything to overcome this strong inference that Chas Roberts did not discriminate against him because of his race.

  E. **Plaintiff fails to state a claim for FMLA interference.**

    To state a claim for FMLA interference, Plaintiff must allege that Chas Roberts interfered with his use of FMLA leave. For example, an employer who denies a request for additional leave or discourages an employee from using leave has interfered with an employee's use of FMLA. *See Xin Liu v. Amway Corp*, 347 F.3d 1125, 1133 (9th Cir. 2003). But Plaintiff makes no such allegation here. Instead, Plaintiff admits that he took approved leave under the FMLA from May of 2023 through September 25, 2023. *See* Second Amended Complaint (Doc. 13) at ¶ 129. He does not allege – nor could he – that he was discouraged from taking leave or that he was denied a request for additional leave, and it is obvious that, having taken leave from May of 2023 through September 25, 2023, he necessarily was provided *more* than the twelve weeks of leave required under the FMLA.

    Plaintiff's only argument to the contrary is that Chas Roberts interfered with his rights under the FMLA by "decreasing his commission structure, not restoring him to his same or substantially similar position, and instead terminating him." *See* Second Amended Complaint (Doc. 13) at ¶ 130. That is a retaliation claim, not an interference claim. As such, Plaintiff has not stated a claim for FMLA interference.

  F. **All of Plaintiff's claims fail because there is no causal connection between the end of Plaintiff's employment and his race, any protected activity, or FMLA leave.**

    Finally, with respect to all of Plaintiff's claims – for retaliation under Title VII or § 1981, for race discrimination under Title VII or § 1981, or for FMLA retaliation – Plaintiff alleges that he was terminated and that this termination was caused by his race or some type of protected activity. But Plaintiff was, by his own admission, not terminated for any of these things. As Plaintiff alleges, he "objected to the 'new' commission

10

117694446.1

contract," was informed that thew commission contract was a term of his employment, and told him that, if he did not accept it, it would be considered a voluntary resignation. *See* Second Amended Complaint (Doc. 13) at ¶ 44.

Plaintiff concedes that the end of his employment – whether regarded as a termination or a resignation – was directly caused by his failure to accept a commission structure that was in line with all of the other employees. *See* Second Amended Complaint (Doc. 13) at ¶¶ 33 – 37. As such, to the extent Plaintiff's claims are premised on an alleged wrongful termination, he cannot prove causation and his claims fail.

### III. CONCLUSION

All of Plaintiff's claims – save for the FMLA retaliation claim – should be dismissed in their entirety. All of Plaintiff's claims pre-2020 are time-barred. Plaintiff fails to state a claim for retaliation under Title VII or § 1981, fails to state a claim for race discrimination, and fails to state a claim for FMLA interference. And, even in Plaintiff's telling, he fails to even assert that the end of his employment was causally tied to any of these claims. Given this, Counts 1, 2, 3, 4, and 6 of Plaintiff's Second Amended Complaint should be dismissed.

DATED this 31st day of January, 2025.

JONES, SKELTON & HOCHULI, P.L.C.

By /s/David C. Potts
David C. Potts
40 N. Central Avenue, Suite 2700
Phoenix, Arizona 85004
Attorneys for Defendant Chas Roberts Air Conditioning, Inc. dba Chas Roberts Air Conditioning & Heating

11

117694446.1

**CERTIFICATE OF SERVICE**

I hereby certify that on this 31st day of January, 2025, I caused the foregoing document to be filed electronically with the Clerk of Court through the CM/ECF System for filing; and served on counsel of record via the Court's CM/ECF system.

/s/D. Potts

117694446.1