**SILENCE LAW GROUP, PLLC**
20235 N. Cave Creek Rd. Ste 104 # 460
Phoenix, AZ 85024

**Jeffrey Silence** (029143)
(602) 932-8358
jeff@silencelaw.com

Co-Counsel for Plaintiff

**MARKO LAW, PLLC**
220 W Congress, Fourth Floor
Detroit, MI 48226

**Nichole Omilion** (P86380)
(313) 777-7529
nichole@markolaw.com
**Jonathan Marko** (P72450)
jonathan@markolaw.com

Co-Counsel for Plaintiff

*Attorneys for Brandon Robinson*

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| Brandon Robinson, | Case No. 2:24-cv-02774-MTL |
|---|---|
| Plaintiff, | |
| v. | **THIRD AMENDED COMPLAINT** |
| Chas Roberts Air Conditioning, Inc. dba Chas Roberts Air Conditioning & Heating, | |
| Defendant. | |

Plaintiff, Brandon Robinson, alleges as follows:

## JURISDICTION AND VENUE

1. Plaintiff Brandon Robinson is a 48-year-old man residing in the City of Phoenix, County of Maricopa, State of Arizona.

Silence Law Group
20235 N. Cave Creek Rd. Ste 104 # 460
Phoenix, AZ 85024

2. Defendant Chas Roberts Air Conditioning, Inc., d/b/a Chas Roberts Air Conditioning & Heating ("Chas Roberts") is a domestic corporation located and conducting business in the City of Phoenix, County of Maricopa, State of Arizona.

3. The Court has federal question jurisdiction (28 U.S.C. § 133) because Plaintiff's two claims are based on federal laws.

4. The events giving rise to this Complaint occurred within this judicial district, and venue is proper pursuant to 29 U.S.C. § 1391.

## **FACTUAL ALLEGATIONS**

5. Plaintiff, by reference, incorporates the preceding paragraphs of this Complaint as though fully set forth herein.

6. Plaintiff Robinson began his employment with Defendant Chas Roberts in September 2015.

7. Defendant Chas Roberts is engaged in providing contracting services for the design, construction, and maintenance of heating and cooling ("HVAC") services to residents and businesses of Arizona.

8. Plaintiff Robinson was employed by Defendant Chas Roberts as a Sales Consultant Associate.

9. Plaintiff is an African American male.

10. Chas Roberts maintained a predominantly Caucasian workforce.

11. Plaintiff was the only African American Sales Consultant Associate at Chas Roberts.

12. All the other Sales Consultant Associates were Caucasian.

Silence Law Group
20235 N. Cave Creek Rd. Ste 104 # 460
Phoenix, AZ 85024

13. In 2015, Plaintiff received a raise in his commission percentages due to producing top sales in his region.

14. On or around February of 2016, Robinson received a text message from Defendant Chas Robert's Sales Manager, Noah Senter, wherein he used the word "nigga."

15. On or around February of 2016, Robinson discussed the incident with his coworkers and was informed by coworker Yolanda Pittman that Noah Senter regularly uses the racial slur.

16. In 2017, the bonus structure included a 1% bonus for two million dollars ($2,000,000) in revenue and a 0.5% bonus if the employee obtained one million five hundred thousand dollars ($1,500,000) in revenue.

17. In 2017, Plaintiff brought in over two million dollars in revenue.

18. Plaintiff was the only Sales Consultant that brought in over two million dollars in revenue in 2017.

19. In February of 2018, Plaintiff if he brought in two million dollars ($2,000,000) in revenue, he would only be paid a bonus of .5%.

20. Plaintiff was informed that if he brought in two million five hundred thousand (2,500,000) in revenue, he would only be paid a 1% bonus.

21. The change in the bonus structure disparately applied only to Plaintiff because he was the only Sales Consultant who brought in enough sales to meet the 1% bonus.

22. The bonus structure change did not affect the Caucasian Sales Consultants as their sales were not close to obtaining the 1% bonus.

Silence Law Group
20235 N. Cave Creek Rd. Ste 104 # 460
Phoenix, AZ 85024

23. On or around February of 2018, Defendant Chas Robert's Sales Manager, Noah Senter, informed Plaintiff that the bonus structure was changed by Defendant Chas Robert's Vice President, Damon Bromagen, who changed the structure because he specifically did not want to pay Plaintiff.

24. On or around February of 2018, Plaintiff verbally complained to Defendant Chas Robert's Human Resources about the differential treatment he received in comparison to his Caucasian coworkers wherein he was informed to work it out with Noah Senter and Damon Bromagen.

25. On or around January of 2021, Defendant Chas Robert replaced Damon Bromagen as the company's Vice President, with Mike Senter, who is the brother of Noah Senter.

26. On or around January of 2021, Plaintiff had a meeting with Noah and Mike Senter to discuss the bonus structure.

27. In this meeting, Plaintiff complained about the intentional disparate treatment against him based on his race.

28. In this meeting, Plaintiff also complained about the unlawful retaliation against him for having reported Noah Senter to HR for using the "N" word.

29. Noah and Mike Senter told Plaintiff in this meeting that the alterations were made to specifically prevent Plaintiff from earning the 1% bonus.

30. On or around May of 2023, Plaintiff informed Human Resources for Defendant Chas Roberts that he is seeking to take time off for his worsening mental health conditions.

Silence Law Group
20235 N. Cave Creek Rd. Ste 104 # 460
Phoenix, AZ 85024

31. Defendant Chas Roberts did not offer Plaintiff to utilize his paid sick leave to take time off for his worsening mental health condition nor did they pay Plaintiff any of his earned sick time.

32. In any event, Defendant's policy was that it would only pay Plaintiff a total of $80 a day for his paid sick time under A.R.S. § 23-371 et seq.

33. At 8 hours per day, that amounts to $10 per hour, which is less than the Arizona minimum wage.

34. Defendant Chas Roberts advised Plaintiff to take FMLA instead of paying Plaintiff his earned sick time, which is a violation of A.R.S. § 23-371 et seq.

35. On or around May of 2023, Plaintiff had been approved for the Family Medical Leave Act ("FMLA") due to his worsening mental health and to treat his mental health conditions such as depression, anxiety, stress, and suicidal ideations.

36. During FMLA leave, Plaintiff was informed by his brother and other coworkers that Noah Senter and Mike Senter questioned them to obtain the reason for his hospitalization.

37. Plaintiff was approved to return to work on September 25, 2023.

38. On September 25, 2023, Noah and Mike Senter presented Plaintiff with a new contract that informed him that he would be receiving a pay cut and reducing his earning percentages on his commission structure.

39. The "new" commission structure was the same earning percentage structure that Plaintiff started with at the company.

Silence Law Group
20235 N. Cave Creek Rd. Ste 104 # 460
Phoenix, AZ 85024

40. The "new" commission structure only disparately effected Plaintiff, as he was the only Sales Consultant that had received a raise in his commission percentages, above the standard commission percentages, due to his hard work and success in the company.

41. The "new" commission structure took 3% off his bonus earning percentage.

42. Plaintiff's Caucasian coworkers were not affected by the "new" commission structure, as they were still on the base commission model with no raise in their commission percentages.

43. Therefore, none of Plaintiff's coworkers were losing 3% in their commission earning percentage with the "new" structure because their pay scale stayed the same.

44. On September 25, 2023, Plaintiff inquired about the basis for the "new" commission structure.

45. Noah and Mike Senter stated the "new" commission structure was due to his work truck being a "disaster," wherein Plaintiff asked to show him as he had not driven his work truck since May of 2023 because he was on FMLA leave.

46. On September 25, 2023, Plaintiff took photographs of his work truck in pristine condition, and requested to look at the other associates' vehicles, which Noah and Mike Senter refused.

47. On or around September 25, 2023, Plaintiff received five appointments and closed all five deals and surpassed the department's average.

48. On October 02, 2023, Plaintiff was called into Noah Senter's office to again sign the "new" commission contact.

Silence Law Group
20235 N. Cave Creek Rd. Ste 104 # 460
Phoenix, AZ 85024

49. On October 02, 2023, Plaintiff objected to the "new" commission contract and was informed by Defendant Chas Robert's Sales Manager, Noah Senter, that they considered his failure to immediately sign the significantly worse commission contract as a voluntary resignation.

50. On October 02, 2023, during Plaintiff's meeting with Noah Senter, Plaintiff confronted Defendant about the unfair treatment and the disparate application of the "new" commission structure had on him versus his other Caucasian coworkers.

51. On October 02, 2023, Plaintiff informed Noah Senter that he was not resigning, and if his employment ended, it would be due to Defendant Chas Robert's terminating his employment.

52. Defendant Chas Roberts terminated Plaintiff even though his sales were higher than all his Caucasian counterparts.

53. On October 02, 2023, Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") and the Department of Labor.

54. On October 02, 2023, Plaintiff was terminated by Defendant Chas Roberts.

55. The bonus structure change, preventing Mr. Robinson from obtaining a 1% bonus, was due to discrimination based on his race.

56. Robinson was wrongfully asked to sign a "new" and significantly worse commission contract because of his race.

57. Robinson was removed from his position and terminated from Defendant Chas Roberts because of his race.

Silence Law Group
20235 N. Cave Creek Rd. Ste 104 # 460
Phoenix, AZ 85024

58. Robinson was wrongfully asked to sign a "new" commission contract by Defendant Chas Roberts in which his pay was decreased, in retaliation for his FMLA leave and for taking leave that should have been treated as paid sick leave under the Arizona paid sick time law.

59. Upon information and belief, Robinson was removed from his position and terminated from Defendant Chas Roberts in retaliation for his FMLA leave, as well as for requesting to use his paid sick time for taking leave that should have been treated as paid sick leave under the Arizona paid sick time law.

60. Robinson has suffered and continues to suffer emotional distress and significant economic loss.

## **FIRST CAUSE OF ACTION**
### **(42 U.S.C. § 1981 – Race Discrimination)**

61. Plaintiff re-alleges and incorporates by reference the foregoing Paragraphs.

62. Defendant's decisions to reduce Plaintiff's commission earning percentage, raising the bonus requirements to ensure Plaintiff did not receive the 1% bonus and discriminatory comments by Defendant's managing agent as set forth above were all motivated by Plaintiff's race, African American, in violation of 42 U.S.C. § 1981.

63. In February 2018, Defendant raised the bonus requirements to ensure Plaintiff did not receive a 1% bonus.

64. In February 2018, similarly, situated Caucasian employees' bonus was not affected.

Silence Law Group
20235 N. Cave Creek Rd. Ste 104 # 460
Phoenix, AZ 85024

65. In February 2018, Plaintiff verbally complained to Defendant Chas Robert's Human Resource Department about the differential treatment he received in comparison to his Caucasian coworkers.

66. On or around January of 2021, Plaintiff had a meeting with Noah and Mike Senter to discuss the bonus structure and the disparate treatment by Defendants due to his race compared to his other Caucasian coworkers.

67. Plaintiff was informed in this meeting that the alterations were made to specifically prevent Plaintiff from earning the 1% bonus.

68. In October 2023, Plaintiff's pay was reduced due to being presented a "new" commission-based structure where his earning percentage on commission was significantly reduced.

69. The "new" commission-based structure intentionally and disparately only effected Plaintiff by taking away 3% of his commission earning percentage.

70. The change in the commission structure only impacted Plaintiff because he was the only Sales Consultant who had previously received a merit-based raise in his commission. Similarly situated Caucasian employees were not affected by the "new" structure because they were already on the base commission percentage structure.

71. Therefore, the Caucasian employees did not  equally suffer a reduction in their commission percentage through the "new" structure.

72. On or around October 02, 2023, Plaintiff confronted Defendant regarding their discriminatory "new" commission structure and pointed out that it only intentionally affected only him and not his Caucasian coworkers.

Silence Law Group
20235 N. Cave Creek Rd. Ste 104 # 460
Phoenix, AZ 85024

73. Plaintiff was unlawfully terminated on October 02, 2023 because of his race and in direct retaliation for confronting Defendant regarding the racial discrimination and disparate treatment compared to other Caucasian employees.

74. Defendant's conduct, as set forth above, was discriminatory based upon race and retaliatory based upon Plaintiff's objection to the unequal treatment based on his race when he confronted Defendant regarding the changed bonus structure requirements and his legitimate objections to the "new" commission structure.

75. The change in bonus structure, the decrease in Plaintiff's earning percentage, and his termination were in direct retaliation for Plaintiff confronting Defendant about the discrimination with the change in bonus structure, decrease in the percentage of commission in comparison to other Caucasian employees, and complaints about racial discrimination and harassment.

76. Plaintiff's pay decrease and the change in bonus structure were a direct result of his complaints of discrimination and disparate treatment compared to other Caucasian employees, and discriminatory comments.

77. Plaintiff sought to enforce his rights to be free from racial discrimination in employment as protected by 42 U.S.C. § 1981 and Title VII.

78. Defendant's conduct, as set forth above, was motivated by its intentional discriminatory animus towards Plaintiff based upon his race and Defendant's intentional retaliation against Plaintiff based upon his complaints of discrimination.

79. Due to Defendant's acts of discrimination and retaliation, including Defendant's bonus structure change in 2018, reducing Plaintiff's commission earning percentage,

and Defendant's decision to ultimately terminate Plaintiff's employment, Plaintiff has suffered loss of both income and benefits.

80. In addition to the loss of income and benefits, Plaintiff has suffered substantial emotional distress damages during the time he was employed with Defendant and subsequent thereto, which manifested itself into depression, anxiety, stress, and suicidal ideations.

81. Plaintiff is entitled to reinstatement with an appropriate pay adjustment or front pay in lieu thereof.

82. Due to Defendant's intentional disregard of Plaintiff's federally protected rights or its reckless disregard thereof, Plaintiff is entitled to an award of punitive damages.

## SECOND CAUSE OF ACTION
### (42 U.S.C. § 1981 – Retaliation for Reporting Race Discrimination)

83. Plaintiff re-alleges and incorporates by reference the foregoing Paragraphs.

84. In February 2018, Plaintiff verbally complained to Defendant Chas Robert's Human Resource Department about the differential treatment he received in comparison to his Caucasian coworkers.

85. On or around January of 2021, Plaintiff had a meeting with Noah and Mike Senter to discuss the bonus structure and the disparate treatment by Defendants due to his race compared to his other Caucasian coworkers.

86. Plaintiff was informed in this meeting that the alterations were intentionally made to specifically prevent Plaintiff from earning the 1% bonus.

Silence Law Group
20235 N. Cave Creek Rd. Ste 104 # 460
Phoenix, AZ 85024

Silence Law Group
20235 N. Cave Creek Rd. Ste 104 # 460
Phoenix, AZ 85024

87. On or around October 02, 2023, Plaintiff confronted Defendant regarding their discriminatory "new" commission structure and pointed out the fact that it only affected him and not his Caucasian coworkers.

88. Plaintiff's pay decrease and termination from employment was in retaliation for Plaintiff's continuous objection to unequal treatment based on his race.

89. Plaintiff sought to enforce his rights to be free from race discrimination in employment as protected by 42 U.S.C. § 1981.

90. Due to Defendant's acts of unlawful retaliation, including decreasing Plaintiff's commission earning percentage, changing the bonus structure, and his termination, Plaintiff has suffered a loss of both income and benefits.

91. In addition to the loss of income and benefits, Plaintiff has suffered substantial emotional distress damages during the time Plaintiff was employed with Defendant and subsequent thereto, which has manifested itself with Plaintiff suffering depression, anxiety, stress, and suicidal ideations.

92. Plaintiff is entitled to reinstatement with an appropriate pay adjustment or front pay in lieu thereof.

93. Due to Defendant's intentional disregard of Plaintiff's federally protected rights or its reckless disregard thereof, Plaintiff is entitled to an award of punitive damages.

### THIRD CAUSE OF ACTION
### (Title VII – Race Discrimination)

94. Plaintiff re-alleges and incorporates by reference the foregoing Paragraphs.

Silence Law Group
20235 N. Cave Creek Rd. Ste 104 # 460
Phoenix, AZ 85024

95. Defendant's decisions relative to changing the bonus structure, decreasing Plaintiff's earning percentage in his commission, and his termination, as well as other actions as set forth above, all were motivated by Plaintiff's race in violation of Title VII of the 1964 Civil Rights Act as amended (Title VII).

96. Plaintiff was the only African American Sales Consultant. All other Sales Consultants were Caucasian.

97. In February 2018, Defendants intentionally changed the bonus structure to specifically ensure that Plaintiff would not be able to receive a 1% bonus.

98. The change in bonus structure only effected Plaintiff because he was the only employee who brought in enough revenue to hit the 1% bonus.

99. The change in bonus structure intentionally did not affect the Caucasian employees because they did not generate enough revenue to meet the 1% bonus.

100. On September 25, 2023, Plaintiff was asked to sign a "new" commission structure reducing his commission earning percentage.

101. The "new" commission structure was the same as the significantly worse base commission structure that all Sales Consultants start at.

102. Plaintiff would lose 3% of his commission earning capacity with this "new" commission structure.

103. The "new" commission structure only effected Plaintiff, as he was the only Sales Consultant that obtained a raise in his commission percentage based on his hard work and success in the company.

104.    The "new" commission structure did not affect the Caucasian Employees as they were already on the base commission structure and would lose nothing.

105.    Defendant's conduct as set forth above within this Complaint was discriminatory based upon race.

106.    In addition to the loss of income and benefits, Plaintiff has suffered substantial emotional distress damages during the time Plaintiff was employed with Defendant and subsequent thereto, which has manifested itself with Plaintiff suffering depression, anxiety, stress, and suicidal ideations.

107.    Plaintiff is entitled to reinstatement with an appropriated pay adjustment or front pay in lieu thereof.

### FOURTH CAUSE OF ACTION
### (Title VII – Retaliation for Reporting Race Discrimination)

108.    Plaintiff re-alleges and incorporates by reference the foregoing Paragraphs.

109.    Plaintiff's pay decrease and termination from employment was in retaliation for Plaintiff's continuous objections to unequal treatment based on his race.

110.    In February 2018, Plaintiff verbally complained to Defendant Chas Robert's Human Resource Department about the differential treatment he received in comparison to his Caucasian coworkers.

111.    On or around January of 2021, Plaintiff had a meeting with Noah and Mike Senter to discuss the bonus structure and the disparate treatment by Defendants due to his race compared to his other Caucasian coworkers.

112.   Plaintiff was informed in this meeting that the alterations were made to specifically prevent Plaintiff from earning the 1% bonus.

113.   On or around October 02, 2023, Plaintiff confronted Defendant regarding their discriminatory "new" commission structure and pointed out the fact that it only affected him and not his Caucasian coworkers.

114.   Plaintiff sought to enforce his rights to be free from race discrimination in employment as protected by 42 USC §1981 and Title VII.

115.   Due to Defendant's acts of discrimination and retaliation, including decreasing Plaintiff's commission earning percentage, changing the bonus structure, and his termination, Plaintiff has suffered a loss of both income and benefits.

116.   In addition to the loss of income and benefits, Plaintiff has suffered substantial emotional distress damages during the time Plaintiff was employed with Defendant and subsequent thereto, which has manifested itself with Plaintiff suffering depression, anxiety, stress, and suicidal ideations.

117.   Plaintiff is entitled to reinstatement with an appropriated pay adjustment or front pay in lieu thereof.

118.   Due to Defendant's intentional disregard of Plaintiff's federally protected rights or its reckless disregard thereof, Plaintiff is entitled to an award of punitive damages.

**FIFTH CAUSE OF ACTION**
**(FMLA Retaliation)**

119.   Plaintiff re-alleges and incorporates by reference the foregoing paragraphs.

120.   Plaintiff was an eligible employee within the coverage of the Family and Medical Leave Act, 29 U.S.C. 28.

121.   Defendant was an employer within the coverage of the Family and Medical Leave Act.

122.   Plaintiff was eligible for and qualified for leave under the Family and Medical Leave Act to treat his serious medical conditions (depression, anxiety, stress, and suicidal ideations).

123.   Plaintiff applied for and was granted leave under the Family and Medical Leave Act by Defendants.

124.   Plaintiff was on approved leave under the Family and Medical Leave Act from May of 2023 through September 25, 2023.

125.   Plaintiff returned to work on September 25, 2023, and on the day, he returned, he was confronted by management to agree to a "new" commission structure, where his commission earning percentages were decreased.

126.   Plaintiff objected to the "new" commission structure because it reduced his earnings, which he earned through promotion throughout years with the company.

127.   The "new" commission structure only effected Plaintiff as he was the only Sales Consultant that received a merit based raised on his commission percentages because of his hard work and success in the company.

128.   The "new" commission structure intentionally did not affect the Caucasian Sales Consultants as they were already at the base commission structure.

Silence Law Group
20235 N. Cave Creek Rd. Ste 104 # 460
Phoenix, AZ 85024

Silence Law Group
20235 N. Cave Creek Rd. Ste 104 # 460
Phoenix, AZ 85024

129.   Defendant retaliated against Plaintiff for exercising his rights under the Family and Medical Leave Act, including but not limited to reducing Plaintiff's commission earning percentages, subjecting him to a contractual agreement to hinder his earnings, and terminating Plaintiff's employment.

130.   Due to Defendant's retaliation, including decreasing Plaintiff's commission earning percentage and his termination, Plaintiff has suffered a loss of both income and benefits.

131.   Plaintiff is entitled to lost wages and liquidated damages on the amount of his lost wages.

### SIXTH CAUSE OF ACTION
### (FMLA Interference)

132.   Plaintiff re-alleges and incorporates by reference the foregoing paragraphs.

133.   Plaintiff was an eligible employee within the coverage of the Family and Medical Leave Act.

134.   Plaintiff was on approved leave under the Family and Medical Leave Act from May of 2023 through September 25, 2023.

135.   Defendant interfered with Plaintiff's rights under the Family and Medical Leave Act, by among other things, decreasing his commission structure, not restoring him to his same or substantially similar position, and instead terminating him.

136.   Plaintiff has suffered a loss of both income and benefits.

137.   Plaintiff is entitled to lost wages and liquidated damages on the amount of his lost wages under the FMLA.

Silence Law Group
20235 N. Cave Creek Rd. Ste 104 # 460
Phoenix, AZ 85024

### SEVENTH CAUSE OF ACTION
### (Failure To Pay Arizona Sick Leave)

138.   Plaintiff realleges the above paragraphs as fully set forth herein.

139.   Arizona employees are entitled to accrue and use "earned paid sick time" for any of the reasons outlined under A.R.S. § 23-373.

140.   Defendant failed to allow Plaintiff to use his accrued sick time.

141.   Defendant also failed to properly calculate the amount of Plaintiff's sick time.

142.   Defendant should have determined Plaintiff's average hourly rate of pay by dividing the amount of his average pay plus commissions by the number of hours worked.

143.   Defendant should have paid Plaintiff based on that average hourly rate whenever he requested time off.

144.   Instead, Defendant paid Plaintiff $80 per day, which did not represent anywhere close to his average hourly rate.

145.   $80 for an eight-hour day means Plaintiff was only getting $10 per hour.

146.   Defendant also failed to track and notate Plaintiff's earned paid sick time on each paycheck.

147.   Defendant is liable for paying the full amount of unpaid sick time, plus an amount equal to twice that amount, and mandatory attorney fees under A.R.S. § 23-364.

### EIGHTH CAUSE OF ACTION
### (Retaliation for Requesting to Use Paid Sick Time A.R.S. § 23-364)

148.   Plaintiff realleges the above paragraphs as fully set forth herein.

149. Mr. Robinson was retaliated against and then terminated because he requested to use his accrued paid sick time.

150. Defendant is liable for Plaintiff's compensatory damages and for a minimum of $150 per day from when Plaintiff was first retaliated against, through the date of judgment or any settlement of his claim. A.R.S. § 23-364.

## JURY TRIAL DEMAND

Plaintiff hereby demands a jury trial in this matter on all legal claims.

**WHEREFORE,** Plaintiff Requests the Following Relief from this Court:

A. An award of all lost income and benefits pursuant to Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 1981, the FMLA, and A.R.S. § 23-373;

B. An award of liquidated damages on the amount of lost wages pursuant to the FMLA;

C. An award of compensatory damages pursuant to Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 1981, the FMLA, and A.R.S. § 23-373;

D. Affirmative injunctive relief in the form of reinstatement or front pay pursuant to Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 1981, and the FMLA;

E. An award of punitive damages pursuant to Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 1981, and A.R.S. § 23-373;

F. An award of attorney's fees and costs pursuant to Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 1981, the FMLA, and A.R.S. § 23-364(G);

G. For pre-judgment and post-judgment interest at the highest rate allowed by law;

H. No less than $150.00 per day from the date Mr. Robinson was terminated under

A.R.S. § 23-364; and

I. Such further relief as this Court deems proper.


DATED this 26th day of February, 2025.

**Silence Law Group**


*/S/ Jeffrey Silence*
Jeffrey Silence
*Attorney for Brandon Robinson*

Silence Law Group
20235 N. Cave Creek Rd. Ste 104 # 460
Phoenix, AZ 85024

1

### *Certificate of Service*

2

I hereby certify that on 26th day of February, 2025, I electronically transmitted the
attached document to the Clerk's Office using the CM/ECF System for filing.

3

4

 */s/ Jeffrey Silence*

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Silence Law Group
20235 N. Cave Creek Rd. Ste 104 # 460
Phoenix, AZ 85024