David C. Potts, Bar #030550
JONES, SKELTON & HOCHULI P.L.C.
40 N. Central Avenue, Suite 2700
Phoenix, Arizona 85004
Telephone: (602) 263-4547
Fax: (602) 200-7829
dpotts@jshfirm.com

Attorney for Defendant Chas Roberts Air
Conditioning, Inc. dba Chas Roberts Air
Conditioning & Heating

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Brandon Robinson, | No. 24-CV-02774-PHX-SHD |
| Plaintiff, | **Defendant's Reply in Support of Partial Motion to Dismiss Plaintiff's Third Amended Complaint** |
| v. | |
| Chas Roberts Air Conditioning, Inc. dba Chas Roberts Air Conditioning & Heating, | |
| Defendant. | |

Defendant Chas Roberts Air Conditioning, Inc. dba Chas Roberts Air Conditioning & Heating ("Chas Roberts"), by and through counsel undersigned, hereby responds in support of its Partial Motion to Dismiss.

## I.    PLAINTIFF'S ALLEGED FACTS

Plaintiff's Response is imprecise as to the nature of his allegations. This, as a result, bears some clarification. Plaintiff's Complaint is based upon a number of separate and distinct actions. In particular:

- Plaintiff alleges that, in 2016, a Chas Roberts manager used a racial slur in a text message with him and that another co-worker claimed that this manager "frequently" used the slur. *See* Third Amended Complaint (Doc. 21) at ¶¶ 14 – 15. Plaintiff

does not allege that the slur was used toward him again, nor does he allege any other harassment.[1]

- Plaintiff alleges that, in 2018, a change was made to the *bonus structure* – not the commission structure – regarding the amount of a bonus he would be paid based upon his sales revenue. *See* Third Amended Complaint (Doc. 21) at ¶¶ 19 – 23. Plaintiff alleges that he complained about this at the time. *See* Third Amended Complaint (Doc. 21) at ¶ 24.

- Plaintiff alleges that, in 2021, he again complained about the prior change to the bonus structure and that he was retaliated against for reporting his manager to human resources. *See* Third Amended Complaint (Doc. 21) at ¶¶ 25 – 29. There is no adverse action, though, alleged as part of this claim.

- Plaintiff alleges that, in 2023, he requested leave, which he was given, and that, during his FMLA leave, his managers "questioned [his brother and other coworkers] to obtain the reason for his hospitalization." *See* Third Amended Complaint (Doc. 21) at ¶¶ 35 – 36.

- Plaintiff alleges that, upon his return from leave, he was presented with a change to the *commission structure* that reduced his commission earning percentage. *See* Third Amended Complaint (Doc. 21) at ¶¶ 38 – 41. He refused this change, and his employment ended as a result. *See* Third Amended Complaint (Doc. 21) at ¶¶ 51 – 52.

Chas Roberts takes issue with most of these alleged facts but understands that they are accepted as true for purposes of the Motion to Dismiss. The issue is, even under the facts as Plaintiff has alleged, he is not entitled to relief on most of his claims.

---

[1] Plaintiff does allege that he was discriminated against due to his race, but he does not make any specific factual allegations about race-based harassment in his Third Amended Complaint.

118474145.1

## II.  LEGAL ARGUMENT

### A.  Plaintiff fails to state a claim for retaliation under Title VII or § 1981.

To show a prima facie case of retaliation under § 1981 or Title VII, an employee must demonstrate that (1) the employee engaged in a protected activity, (2) the employer subjected the employee to an adverse employment action, and (3) a causal link exists between the protected activity and the adverse employment action. *Nilsson v. City of Mesa*, 503 F.3d 947, 954 (9th Cir. 2007). The causal link can be inferred from circumstantial evidence such as the employer's knowledge of the employee's protected activities and the proximity in time between the protected activity and the adverse employment action. *Dawson v. Entek Int'1*, 630 F.3d 928, 936 (9th Cir. 2011). Causation will only be inferred from timing alone if the proximity is "very close[,]" *Clark Cnty. School Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001), such that the "adverse employment action follows on the heels of protected activity." *Villiarimo v. Aloha Island Air*, 281 F.3d 1054, 1065 (9th Cir. 2002).

Plaintiff correctly notes that causality is not "dependent, as a matter of law, on temporal proximity." *Porter v. California Dept. of Corrections*, 419 F.3d 885, 895 (9th Cir. 2005). In *Porter*, for example, the Ninth Circuit recognized that there could be a "valid reason for the delay between [] alleged protected activities and the claimed adverse actions." *Id.* In that case, the alleged abuser was not in a "position to retaliate" until after he took on a supervisory position. *Id.* Plaintiff also correctly notes that courts have avoided adopting a "per se rule that a specified time period is too long to support an inference of retaliation," fearing that "well-advised retaliators will simply wait until that period has passed." *Coszalter v. City of Salem*, 320 F.3d 968, 978 (9th Cir. 2003).

The problem is that Plaintiff has no evidence whatsoever of causation *except* for temporal proximity. Aside from a single text allegedly sent to Plaintiff in 2016, he has not identified any specific harassing conduct indicating racial animus. And to the extent

3

Plaintiff alleges that employment changes were made "specifically to harm Plaintiff," that is not what he actually alleged – he actually alleged that changes to the bonus and commission structure were because he "did not want to pay Plaintiff," who was, as Plaintiff himself alleges, the "only Sales Consultant that brought in over two million dollars in revenue in 2017" later the "only Sales Consultant that had received a raise in his commission percentages, above the standard commission percentages, due to his hard work and success in the company." *See* Third Amended Complaint (Doc. 21) at ¶¶ 21, 23, and 40. In other words, Plaintiff cannot claim that statements about Chas Roberts not wanting to pay Plaintiff are evidence of animus – they are evidence that Chas Roberts believed it was paying a top performer, that it had given a raise in commission percentages previously, too much.

In sum: Plaintiff's allegation is that company-wide changes to the structure in 2023 were made because Plaintiff complained of race discrimination in 2016, 2018, and 2021. The person about whom Plaintiff alleges he complained in 2016 has been in a supervisory position over Plaintiff for the entirety of Plaintiff's employment, and outside of that single allegation in 2016, there is no factual allegation suggesting any racial animus at all. In fact, Plaintiff has received raises in his commissions that no other employee received. Plaintiff's only hope of establishing the causation required for his retaliation claim is temporal proximity, and he does not even have that. As such, Plaintiff fails to state a retaliation claim.[2]

---

[2] Plaintiff suggests that in his Response that because he complained about the change to the commission structure and was then terminated, this is, itself retaliation. But there is no question that, even under Plaintiff's version of the facts, the end of Plaintiff's employment was due to his refusal to accept the changes to the commission structure. No matter how the end of this employment is characterized, the issue for the parties is the change to the commission structure, not the "termination."

118474145.1

**B.** **Plaintiff fails to state a claim for race discrimination under Title VII or § 1981.**

To establish a prima facie case of race discrimination under § 1981 or Title VII, Plaintiff must show: (1) he belongs to a protected class; (2) he performed his job satisfactorily; (3) he suffered an adverse employment action; and (4) he was treated differently than similarly situated employees who do not belong to the same protected class. *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018 (9th Cir. 2006). Moreover, where the same actor is responsible for taking both a favorable employment action towards an employee and later taking an adverse employment action, "a strong inference arises that there was no discriminatory action." *Coghlan v. American Seafoods Co. LLC*, 413 F.3d 1090, 1096 (9th Cir. 2005) (quoting *Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267 (9th Cir. 1996)).

In his Response, Plaintiff claims that Defendant "misrepresents Plaintiff's claims." Chas Roberts respectfully disagrees. It understands that Plaintiff is alleging that the changes to the bonus and commission structure were based on racial animus because Plaintiff was the only employee affected by the pay changes.

But Plaintiff refuses to concede even the allegations of his Complaint. Plaintiff alleges, in his Third Amended Complaint, that he "was the only Sales Consultant that had received a raise in his commission percentages, above the standard commission percentages, due to his hard work and success in the company." *See* Third Amended Complaint (Doc. 13) at ¶¶ 38 – 42. In other words, Plaintiff received raises in his commission percentages higher than his Caucasian counterparts, and Chas Roberts' attempts to put all employees on the same commission structure is the discriminatory act.

The problem for Plaintiff is that he cannot establish he was treated "less favorably than other similarly situated employees outside his protected class." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). In arguing to the contrary, Plaintiff asks the Court to ignore everything except the change to the bonus structure in 2018 and

118474145.1

the commission structure in 2023. Though those changes put all employees on a level playing field, Plaintiff asks this Court to ignore his own claim that he had "received a raise in his commission percentages." Somehow, though Plaintiff alleges he was the victim of discriminatory and retaliatory conduct since he was hired, the alleged perpetrators of this discrimination and retaliation specifically raised his commission percentages higher than his peers. This Court should look at Plaintiff's claims in context – he was not treated less favorably than those outside of his protected class.

Meanwhile, Plaintiff did not respond at all to Chas Roberts' same actor inference argument. As noted, the same people at Chas Roberts who provided Plaintiff with raises beyond those given to his Caucasian counterparts are the individuals who Plaintiff alleges discriminated against him through the change in the commission structure in 2023. The same actor inference applies, and Plaintiff does not allege anything to overcome this strong inference that Chas Roberts did not discriminate against him because of his race.

### C. **Plaintiff fails to state a claim for FMLA interference.**

It is unclear, after Plaintiff's Response, what his FMLA interference claim is supposed to me. To state a claim for FMLA interference, Plaintiff must allege that Chas Roberts interfered with his use of FMLA leave. For example, an employer who denies a request for additional leave or discourages an employee from using leave has interfered with an employee's use of FMLA. *See Xin Liu v. Amway Corp*, 347 F.3d 1125, 1133 (9th Cir. 2003). But Plaintiff was permitted to use approved leave. *See* Third Amended Complaint (Doc. 13) at ¶ 134.

Plaintiff's response is that Chas Roberts interfered with his rights under the FMLA by "decreasing his commission structure, not restoring him to his same or substantially similar position, and instead terminating him." *See* Third Amended Complaint (Doc. 13) at ¶ 135. But again, Plaintiff asks this Court to close its eyes and cover its ears. Plaintiff was, by his own admission, restored to the same position he had before –

6

Sales Consultant. The change to the commission structure does not change the underlying position, particularly when Plaintiff admits that the change to the commission structure applied to all Sales Consultants. *See* Third Amended Complaint (Doc. 13) at ¶ 40. His claim that the commission structure was changed because of his FMLA leave is not an FMLA interference claim – it is an FMLA retaliation claim – and Plaintiff's FMLA interference claim should be dismissed.

D. **All of Plaintiff's claims fail because there is no causal connection between the end of Plaintiff's employment and his race, any protected activity, FMLA leave, or use of earned paid sick time.**

Finally, with respect to all of Plaintiff's claims – for retaliation under Title VII or § 1981, for race discrimination under Title VII or § 1981, for FMLA retaliation, or for retaliation for taking earned paid sick leave – Plaintiff alleges that he was terminated and that this termination was caused by his race or some type of protected activity. Plaintiff was, by his own admission, not terminated for any of these things. As Plaintiff alleges, he "objected to the 'new' commission contract," was informed that the commission contract was a term of his employment, and told him that, if he did not accept it, it would be considered a voluntary resignation. *See* Third Amended Complaint (Doc. 13) at ¶ 49.

Plaintiff uses his Response to argue that Chas Roberts "overlooks the racist rhetoric and years of discriminatory policies that Plaintiff endured." To be sure, Plaintiff alleges that a single slur was texted to him in 2016 and that he was subject to two changes in compensation, at least one of which merely undid pay increases that he received from the individuals he accuses of "racist rhetoric." But this is beside the point: the point is that the alleged discriminatory act is not the termination, but the failure to accept a commission structure that was in line with all of the other employees. *See* Third Amended Complaint (Doc. 13) at ¶¶ 38–42. As such, to the extent Plaintiff's claims are premised on an alleged wrongful termination, he cannot prove causation and his claims fail.

7

### III.   CONCLUSION

Plaintiff's claims – save for the FMLA retaliation claim and the failure to pay Arizona sick leave claim – should be dismissed. Plaintiff fails to state a claim for retaliation under Title VII or § 1981, fails to state a claim for race discrimination, and fails to state a claim for FMLA interference. His claims related to the bonus structure are entirely time-barred to the extent they are brought under § 1981 and mostly time-barred to the extent they are brought under Title VII. As such, Counts 1, 2, 3, 4, and 6 of Plaintiff's Third Amended Complaint should be dismissed.

DATED this 26th day of May, 2025.

JONES, SKELTON & HOCHULI, P.L.C.


By /s/David C. Potts
    David C. Potts
    40 N. Central Avenue, Suite 2700
    Phoenix, Arizona 85004
    Attorney for Defendant Chas Roberts Air
    Conditioning, Inc. dba Chas Roberts Air
    Conditioning & Heating

118474145.1

**CERTIFICATE OF SERVICE**

I hereby certify that on this 26th day of May, 2025, I caused the foregoing document to be filed electronically with the Clerk of Court through the CM/ECF System for filing; and served on counsel of record via the Court's CM/ECF system.

/s/D. Potts

118474145.1