**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Brandon Robinson, | No. CV-24-02774-PHX-SHD |
| Plaintiff, | **ORDER** |
| v. | |
| Chas Roberts Air Conditioning Incorporated, | |
| Defendant. | |

Pending before the Court is Defendant Chas Roberts Air Conditioning Incorporated's ("Chas Roberts") Motion to Dismiss Counts 1, 2, 3, 4, and 6 of the Third Amended Complaint, (Doc. 28). Plaintiff Brandon Robinson responded, (Doc. 33), and Chas Roberts replied, (Doc. 34).[1] For the reasons stated below, the motion will be **granted in part** and **denied in part**.

## I.    BACKGROUND

Robinson, an African American male, began working for Chas Roberts as a Sales Consultant Associate in September 2015. (Doc. 21 at ¶¶ 6, 8–9.) Chas Roberts provides "contracting services for the design, construction, and maintenance of heating and cooling ("HVAC") services to residents and businesses of Arizona." (*Id.* at ¶ 7.) Robinson alleges that Chas Roberts "maintained a predominantly Caucasian workforce"; that he "was the only African American Sales Consultant Associate at Chas Roberts"; and that "[a]ll the other Sales Consultant Associates were Caucasian." (*Id.* at ¶¶ 10–12.)

---

[1]    The parties did not request oral argument, and oral argument is not necessary, so this motion is decided without holding a hearing. *See* LRCiv 7.2(f).

In February 2016, Robinson "received a text message from Chas Roberts's Sales Manager, Noah S[.][2], wherein he used the word 'nigga.'" (*Id.* at ¶ 14.) Robinson talked with coworkers about the message and "was informed . . . that Noah S[.] regularly uses the racial slur." (*Id.* at ¶ 15.)

Robinson was very successful at Chas Roberts, "producing top sales in his region." (*Id.* at ¶¶ 13, 17.) In 2015, he "received a raise in his commission percentages" for his efforts. (*Id.* at ¶ 13.) And in 2017, Robinson "brought in over two million dollars in revenue." (*Id.* at ¶ 17.) He was the only Sales Consultant to do so. (*Id.* at ¶ 18.) At the time, Chas Roberts's bonus structure "included a 1% bonus for two million dollars ($2,000,000) in revenue and a 0.5% bonus if the employee obtained one million five hundred thousand dollars ($1,500,000)." (*Id.* at ¶ 16.) However, in February 2018, Chas Roberts changed its bonus structure. (*See id.* at ¶¶ 19–20.) Robinson was told that he would "be paid a bonus of .5%" for bringing in two million dollars, and that he would receive the 1% bonus only if he brought in 2.5 million dollars. (*Id.*)

Robinson was the only Sales Consultant affected by the new bonus structure because he alone "brought in enough sales to meet the 1% bonus." (*Id.* at ¶ 21; *see also id.* at ¶ 22 ("The bonus structure did not affect the Caucasian Sales Consultants as their sales were not close to obtaining the 1% bonus.").) Noah S. told Robinson that the Vice President of the company, Damon B., changed the bonus structure so that he would not have to pay Robinson the 1% bonus. (*Id.* at ¶ 23.) Robinson told Human Resources ("HR") "about the differential treatment he received in comparison to his Caucasian coworkers." (*Id.* at ¶ 24.) In response, HR told Robinson to "work it out" with Noah S. and Damon B. (*Id.*)

Two years later, in January 2021, Chas Roberts replaced Damon B. as Vice President. (*Id.* at ¶ 25.) Around that time, Robinson met with Noah S. and the new Vice President, Mike S., to discuss the bonus structure. (*Id.* at ¶ 26.) Robinson "complained about the intentional disparate treatment against him based on his race" and about "the

[2] To protect the privacy of individuals referenced herein, the Court refers to non-party individuals by their first name and last initial only.

unlawful retaliation against him for having reported Noah S[.] to HR for using the 'N' word." (*Id.* at ¶¶ 27–28.) Noah S. and Mike S. confirmed that "alterations were made to [the bonus structure] . . . to prevent Plaintiff from earning the 1% bonus." (*Id.* at ¶ 29.)

In May 2023, Robinson informed HR that he needed time off due to worsening mental health conditions. (*Id.* at ¶ 30.) Rather than offer him the opportunity to use his paid sick leave, HR directed Robinson to take leave under the Family and Medical Leave Act ("FMLA"). (*Id.* at ¶¶ 31–34.) Under Chas Roberts's leave policy, it would "pay [Robinson] a total of $80 a day for his paid sick time," which, "[a]t 8 hours per day . . . amounts to $10 per hour." (*Id.* at ¶¶ 32–33.) Robinson alleges that Chas Roberts did not pay him "any of his earned sick time," and that, even if it had, his sick leave pay would have been less than the Arizona minimum wage. (*Id.* at ¶¶ 31, 33.) Ultimately, Robinson was approved for FMLA leave due to depression, anxiety, stress, and suicidal ideation. (*Id.* at ¶ 35.)

Four months later, on September 25, 2023, Robinson "was approved to return to work." (*Id.* at ¶ 37.) Upon his return, Noah S. and Mike S. presented Robinson with a new contract that reduced his commission percentages to the base rates—that is, the rates at which he started, when he began working for Chas Roberts in 2015. (*Id.* at ¶¶ 38–39.) The new structure reduced Robinson's bonus earning percentage by three percent. (*Id.* at ¶ 41.) When Robinson inquired about the reason for the new contract, Noah S. and Mike S. told him it was because "his work truck [was] a 'disaster.'" (*Id.* at ¶ 45.) Robinson, however, had not driven his work truck since before he took his FMLA leave in May 2023. (*Id.*) After meeting with Noah S. and Mike S., Robinson photographed his work truck "in pristine condition." (*See id.* at ¶ 46.) Although he asked if he could inspect the other Sales Consultants' vehicles, his request was denied. (*Id.* at ¶ 46.) That day—his first day back from leave—Robinson closed five deals, "surpass[ing] the department's average." (*Id.* at ¶ 47.)

Robinson was the only Sales Consultant to receive a new commission contract. He alleges this was because "he was the only Sales Consultant that had received a raise in his

- 3 -

commission percentages." (*Id.* at ¶¶ 40–42.)  Unlike Robinson, his "Caucasian coworkers" had never received a raise and "were still on the base commission model."  (*Id.* at ¶ 42.)

On October 2, 2023, Robinson was again instructed to sign the revised commission contract and was informed that failure to do so would be treated as a voluntary resignation. (*Id.* at ¶¶ 48–49.)  Robinson stated that "he was not resigning, and if his employment ended" it would be because Chas Roberts terminated him.  (*Id.* at ¶ 51.)  Robinson alleges that Chas Roberts terminated him on October 2, 2023, "even though his sales were higher than all his Caucasian counterparts."  (*Id.* at ¶¶ 52, 54.)  Robinson filed a charge with the Equal Employment Opportunity Commission ("EEOC") and the Department of Labor later that day.  (*Id.* at ¶ 53.)

Robinson filed this case on October 13, 2024.  (Doc. 1.)  In his Third Amended Complaint, he brings eight claims against Chas Roberts.  (Doc. 21 at 8–19.)  Robinson brings his First Cause of Action under 42 U.S.C. § 1981.  (*Id.* at 8.)  He alleges that Chas Roberts discriminated against him based on his race when it (1) changed the bonus structure in 2018 to prevent him from receiving a 1% bonus; (2) offered him a new commission contract in 2023 that reduced his pay; and (3) terminated him for refusing to sign the new contract.  (*Id.* at ¶¶ 61–82.)

The Second Cause of Action is also a § 1981 claim.  (*Id.* at 11.)  Robinson alleges Chas Roberts retaliated against him for reporting race discrimination.  (*Id.* at ¶¶ 83–93.) This claim relies on the same three actions by Chas Roberts—the 2018 bonus structure change, the 2023 new commission contract, and Robinson's termination—and alleges that these actions were taken "in retaliation for [Robinson's] continuous objection to unequal treatment based on race."  (*Id.* at ¶¶ 88, 90.)

Robinson's Third and Fourth Causes of Action are race discrimination and retaliation claims under Title VII of the Civil Rights Act of 1964 and largely mirror his allegations under his § 1981 claims. (*See id.* at 12–15.)  Robinson's Third Cause of Action alleges that Chas Roberts discriminated against him based on his race when it changed the bonus structure in 2018, offered him a new commission contract that reduced his pay in

2023, and fired him for refusing to sign the new contract. (*Id.* at ¶¶ 94–107.) And, in his Fourth Cause of Action, he alleges that these actions were in retaliation for his 2018 and 2021 reports of race discrimination, and his 2023 discussion with Noah S. and Mike S., during which he "pointed out the fact that [the new commission structure] only affected him and not his Caucasian coworkers." (*Id.* at ¶¶ 110–13.)

The Fifth Cause of Action is an FMLA claim of retaliation. Here, Robinson alleges that Chas Roberts retaliated against him for taking FMLA leave by offering him a new contract with reduced pay on his return and ultimately firing him for refusing to sign it. (*Id.* at ¶¶ 119–31.) He alleges that these actions also constitute interference under the FMLA in his Sixth Cause of Action. (*Id.* at ¶¶ 132–37.)

Robinson's Seventh and Eighth Causes of Action arise under Arizona Revised Statutes sections 23-373 and 24-364 and assert that Chas Roberts failed to pay sick leave and retaliated against Robinson for requesting paid sick leave. (*Id.* at ¶¶ 138–50.)

Chas Roberts moves to dismiss Robinson's § 1981 claims, his Title VII claims, and his FMLA interference claim. (*See generally* Doc. 28.) Chas Roberts does not challenge the adequacy of the Complaint with respect to the FMLA retaliation claim or the alleged violations of Arizona law. (*Id.*)

## II.    LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true" and construed in a light most favorable to the plaintiff, "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). A claim is plausible if the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In making this determination, the Court does not accept legal conclusions as true, nor does the Court consider "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.*; *see also id.* ("Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." (alteration in original) (quotation marks omitted)). That said, "a complaint attacked by a Rule 12(b)(6)

motion to dismiss does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A "well-pleaded complaint may proceed even if . . . actual proof of those facts is improbable, and . . . a recovery is very remote and unlikely." *Id.* at 556 (quotation marks omitted).

## III.    DISCUSSION

Chas Roberts's motion to dismiss raises three issues. First, Chas Roberts argues that any claims of discrimination or retaliation under either § 1981 or Title VII predicated on events prior to 2020 are time barred. (Doc. 28 at 5–7.) Second, Chas Roberts asserts that Robinson fails to state a claim for discrimination under either § 1981 or Title VII because Robinson did not allege that Chas Roberts treated similarly situated employees more favorably than Robinson, and that he fails to allege a retaliation claim under either statute because he has not alleged the requisite causal link between an adverse employment action and his race. (*Id.* at 7–10.) Finally, it argues that Robinson has not alleged an FMLA interference claim because the Complaint makes clear that he took FMLA leave. (*Id.* at 10.) The Court will address each argument in turn.

### A.    Title VII and 42 U.S.C. § 1981 Claims

Title VII prohibits employers from discriminating against an individual based on race. 42 U.S.C. § 2000e-2(a)(1). Similarly, § 1981 prohibits discrimination in the "benefits, privileges, terms, and conditions" of employment. 42 U.S.C. § 1981(b). "When analyzing § 1981 claims, [courts] apply the same legal principles as those applicable in a Title VII disparate treatment case." *Surrell v. California Water Serv. Co.*, 518 F.3d 1097, 1103 (9th Cir. 2008) (quotation marks omitted). Robinson brings two types of claims under Title VII and § 1981: (1) disparate treatment based on the 2016 racial slur, the 2018 bonus structure change and the 2023 new commission contract, and (2) retaliation based on the same. Before addressing whether Robinson has adequately pled these claims, the Court must determine which of his claims are timely.

#### 1.    Timeliness

Under both § 1981 and Title VII, a claim is precluded from federal review if it is

not timely filed.  *See National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002) (Title VII claims); *Chardon v. Fernandez*, 454 U.S. 6, 7 (1981) (§ 1981 claims).  Under § 1981, "the statute of limitations depends on whether the claim was cognizable before the Act's 1990 amendments or only made cognizable by those amendments."  *Millia Promotional Servs. v. Ariz. Dep't of Economic Security*, 650 F. Supp. 3d 814, 823 (D. Ariz. 2023).  If the former, then the "relevant state's statute of limitations for personal injury torts" applies; if the latter, "then a federal catch-all statute of limitations of four years applies."  *Id.* at 824.

Under Title VII, a claimant must file a charge with the EEOC about the unlawful conduct within, at most, 300 days "after the alleged unlawful employment practice occurred."  42 U.S.C. § 2000e-5(e)(1).  Failure to timely file a claim with the EEOC precludes federal review.  *See Morgan*, 536 U.S. at 109–10.

For purposes of conducting a statute of limitations analysis, there are two types of claims under Title VII and § 1981: (1) those based upon "discrete retaliatory or discriminatory act[s]", and (2) hostile work environment claims, whose "very nature involves repeated conduct."  *Id.* at 110, 116.

"A discrete retaliatory or discriminatory act," which includes actions like "termination, failure to promote, denial of transfer, or refusal to hire," "'occur[s]' on the day that it 'happened.'"  *Id.* at 110, 114.  "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges."  *Id.* at 113.  "Each discrete discriminatory act starts a new clock for filing charges alleging that act," *id.* at 113, and as such "the proper focus" of the inquiry is "the time of the discriminatory act, not the point at which the consequences of the act become painful," *Chardon*, 454 U.S. at 8 (emphases omitted).  Thus, claims based upon discrete discriminatory acts are time barred if, in the case of Title VII, the act did not happen within the 300-day filing window, and, in the case § 1981, within the four-year filing window.  However, while time-barred acts may not, themselves, form the basis of a Title VII claim, they may be used "as background evidence in support of a timely claim."  *Morgan*, 536

U.S. at 113.

Hostile work environment claims, on the other hand, are "composed of a series of separate acts" that may or may not be actionable on their own, but "collectively constitute one 'unlawful employment practice.'" *Id.* at 117, 115 (citing 42 U.S.C. § 2000e–(e)(1)). When an employee asserts a hostile work environment claim, the claim is timely so long as "an act contributing to the claim occurs within the filing period." *Id.* at 117; *see also id.* at 118 ("In order for the charge to be timely, the employee need only file a charge within 180 or 300 days of any act that is part of the hostile work environment.").

Robinson filed his EEOC complaint on October 2, 2023. (Doc. 21 at ¶ 53.) Any "discrete retaliatory or discriminatory act" that occurred before December 6, 2022—300 days before he filed his complaint—is therefore time barred and cannot form the basis of a Title VII claim.[3] *See Morgan*, 536 U.S. at 110. And with respect to his § 1981 claim, any "discrete and discriminatory act" that occurred before October 13, 2020—four years before he filed the instant complaint—is also time barred.[4] *See Chardon*, 454 U.S. at 7. Thus, to the extent Robinson seeks relief under Title VII and § 1981 for discrimination or retaliation based on (1) the 2016 racial slur, or (2) the 2018 bonus structure change, his claims are time barred and will be dismissed.

Robinson attempts to avoid this result by arguing that he has alleged a "pattern of discriminatory actions" and thus, that the claims are not time barred. (Doc. 33 at 9.) But the cases cited by Robinson, and the theory of continuing pattern or practice, apply only to hostile work environment claims, which Robinson has not alleged. (*See generally* Doc. 21.) *See Morgan*, 536 U.S. at 117–18.

Having found that Robinson's pre-2020 allegations cannot, themselves, constitute

---

[3] A claimant has 180 days to file an EEOC charge unless they have filed with an authorized State agency, in which case they must file their charge within 300 days. 42 U.S.C. § 2000e-5(e)(1). The parties do not specify which filing period applies to Robinson's claims, so the longer of the two is assumed for the purposes of this order.

[4] Chas Roberts asserts that Arizona's two-year statute of limitations applies to Robinson's § 1981 claims, but that, even assuming the longer four-year limitations period applies, any claims predicated on discriminatory acts that occurred before October 13, 2020, are time barred. (Doc. 28 at 7.) For purposes of this order the four-year limit is assumed.

independent claims under Title VII and § 1981, the Court must determine whether, and to what extent, these allegations may be considered in support of Robinson's timely claims, that is, those based on the 2023 new commission contract and subsequent termination. While a discrete discriminatory act has "no present legal consequences" if a claim is not timely filed, it may still inform the evaluation of a current, timely claim of discrimination. *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558 (1977); *see also Morgan*, 536 U.S. at 113 ("Nor does [Title VII] bar an employee from using the prior acts as background evidence."); *Lyons v. England*, 307 F.3d 1092, 1110 (9th Cir. 2002) (holding that the admissibility of time-barred discriminatory acts is governed by the Federal Rules of Evidence).

There is some disagreement among district courts about whether allegations of time-barred conduct may be considered at the pleading stage. *See Bond v. Wells Fargo Bank NA*, 782 F. Supp. 3d 743, 754 (D. Ariz. 2025). Some courts "deem such allegations improper" as premature evidentiary matters that are "better reserved for later stages of litigation." *Id.* (citing *Moreno v. City of Porterville*, 2022 WL 14128245, at *13 (E.D. Cal. 2022)). Others allow the allegations as contextual support for timely claims. *See id.* The Court finds the latter line of cases persuasive.

As outlined in *Bond*, considering allegations of time-barred acts at the motion to dismiss stage is consistent with the Ninth Circuit's reasoning in *Lyons* as well as Rule 8(a)(2) and Rule 12(b)(6). *Id.* at 755–56. A plaintiff need not prove their case in the complaint. Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"). And courts must accept all factual allegations as true and construe them in the light most favorable to the plaintiff. *In re Fitness Holdings Int'l, Inc.*, 714 F.3d 1141, 1144–45 (9th Cir. 2013). It follows that a plaintiff "should be permitted to plead time-barred discriminatory acts to help establish a prima facie case" of discrimination. *Bond*, 782 F. Supp. 3d at 755; *see also Lyons*, 307 F.3d at 1110–11 ("At the initial stage of a case of disparate treatment, appropriate background evidence will be evidence, either direct or circumstantial, that, when combined

with evidence of the employer's present conduct, gives rise to an inference of unlawful discrimination." (cleaned up)).  Accordingly, while Robinson's pre-2020 allegations are not themselves actionable, they may provide contextual support for his timely claims.

Robinson's Title VII and § 1981 claims for disparate treatment and retaliation based upon the 2016 racial slur and the 2018 bonus structure change will therefore be dismissed. Put another way, Causes of Action 1–4 will each be dismissed in part to the extent they are based on the alleged 2016 and 2018 conduct.  Because these claims are time barred as a matter of law, leave to amend would be futile and will be denied.[5]  *In re Cloudera, Inc.*, 121 F.4th 1180, 1189–90 (9th Cir. 2024) ("Although leave to amend should be given freely, denying leave is not an abuse of discretion if it is clear that granting leave to amend would have been futile." (quotation marks omitted)).  However, the pre-2020 allegations may be considered in evaluating Robinson's timely claims.

### 2.    Disparate Treatment Claims

"A disparate treatment claim must plead facts demonstrating '(1) the plaintiff belongs to a protected class, (2) he was performing according to his employer's legitimate expectations, (3) he suffered an adverse employment action, and (4) similarly situated employees were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination.'" *Vasquez v. Piper Sandler & Co.*, 2024 WL 4364147, at *4 (D. Ariz. 2024) (quoting *Reynaga v. Rosenburg Forest Products*, 847 F.3d 678, 691 (9th Cir. 2017)).

With respect to the portions of Robinson's disparate treatment claims that are not time barred, Chas Roberts contends that Robinson has failed to allege the fourth element: that similarly situated employees who did not belong to his protected class were treated more favorably.  (Doc. 21 at 8–9.)  The Complaint, Chas Roberts argues, actually establishes the opposite—namely, that Chas Roberts treated Robinson more favorably than

---

[5]    Notably, Robinson does not argue that he did, in fact, file a timely EEOC charge addressing the 2016 racial slur or the 2018 bonus structure change.  (*See generally* Doc. 33.)  Nor does he contend that his claims should be equitably tolled.  (*Id.*)  Robinson also has not requested leave to amend his Complaint to establish the timeliness of these claims. The underlying facts determining timeliness are therefore not in dispute, and amendment of the complaint would be futile.

his white colleagues by giving him raises his white colleagues were not awarded, and further, that the 2023 new commission contract was an attempt to treat all employees equally by placing Robinson on the same commission structure as all other Sales Associates. (*Id.*)

Chas Roberts's argument fails because it ignores the disjunctive nature of the fourth element, which requires a plaintiff allege "similarly situated employees were treated more favorably, *or* other circumstances surrounding the adverse employment action give rise to an inference of discrimination." *Vasquez*, 2024 WL 4364147, at *4 (emphasis added). Thus, even assuming Robinson has not alleged that he was treated less favorably than similarly situated employees, Robinson may still state a claim of discrimination if he alleges "other circumstances surrounding the adverse employment action give rise to an inference of discrimination." *Id.* Here, Robinson alleges that he was the only Black Sales Associate at Chas Roberts; that his supervisor used a racial slur in at least one communication with him; that the use of such slurs was common in the workplace; that when Robinson brought in enough sales to take advantage of Chas Robert's bonus policy, it changed the policy so that he could not reap its benefits; and that, despite Robinson's continued high performance, Chas Roberts presented him with a new contract reducing his pay and gave him an ultimatum: accept the new terms or face termination. (Doc. 21 at ¶¶ 5–52.) These facts are sufficient to state a plausible claim of discrimination under Title VII. *See e.g.*, *Chuang v. Univ. of Cal. Davis, Bd. of Trs.*, 225 F.3d 1115, 1128 (9th Cir. 2000) (holding that racial slurs in workplace are direct evidence of discrimination); *see also Earl v. Nielsen Media Rsch., Inc.*, 658 F.3d 1108, 1117 (9th Cir. 2011) (reasoning that "an employer's deviation from established policy or practice" that "work[s] to [the plaintiff's] disadvantage" can be evidence of discrimination).

Chas Roberts may be correct that there are race-neutral reasons for its actions. But at the motion to dismiss stage, Robinson need only allege sufficient facts to support a plausible claim of disparate treatment. *Gage v. Mayo Clinic*, 707 F. Supp. 3d 870, 877–88 (D. Ariz. 2023), *aff'd*, 2025 WL 1733503 (9th Cir. 2025) (holding that, while plaintiffs

need not meet the evidentiary standards required at summary judgment, plaintiffs must allege sufficient facts to support a claim of employment discrimination); *Vasquez*, 2024 WL 4364147, at *2 n.2 (declining to apply the *McDonnel Douglass* burden-shifting framework at the motion to dismiss stage). Based on the facts alleged, Robinson has met that threshold.

To bolster its position, Chas Roberts invokes the "same actor inference," which provides that when "the same actor" is responsible for both favorable and unfavorable employment decisions, "a strong inference" arises that there was no discriminatory motive. *Coughlan v. Amer. Seafoods Co. LLC*, 413 F.3d 1090, 1096–98 (9th Cir. 2005). However, while a court must "take into account" the same actor inference "on a summary judgment motion," *id.* at 1098, Chas Roberts cites no case applying the inference to a motion to dismiss. (*See* Doc. 21 at 8–9; Doc. 34 at 5–6.) At least one district court has declined to apply the same actor inference at the pleading stage. *See Banafa v. Contra Costa Cnty.*, 2018 WL 3145595, at *6 n.2 (N.D. Cal. 2018) (declining to apply same actor inference to allegations in a complaint because, in part, no court in this Circuit had done so). Since *Banafa*, this Circuit's practice has not changed. By the Court's review, no court has held that allegations of an employer's prior favorable treatment trigger the same actor inference on a motion to dismiss. Nor would it be appropriate to do so. The same actor inference operates within the *McDonnel-Douglas* burden-shifting framework, which is applied at summary judgment in disparate treatment cases. Within that framework, the inference "amplifies the plaintiff's burden at the pretext stage," the third step of the *McDonnell-Douglass* analysis. *Robillard v. Opal Labs, Inc.*, 428 F. Supp. 3d 412, 441 (D. Or. 2019) (quotation marks omitted). And while the summary judgment standard may "lend[] guidance to the Court's determination of whether plaintiff has sufficiently alleged a claim" it is ultimately "an evidentiary requirement . . . not a pleading standard." *Bond*, 782 F. Supp. 3d at 755 (cleaned up). As such, the Court finds *Banafa* persuasive and will not apply the same actor inference in assessing Robinson's Complaint.

Robinson has alleged sufficient facts to state a plausible claim for relief under

§ 1981 and Title VII for discrimination based on race.  Chas Roberts's motion to dismiss Robinson's timely disparate treatment claims will therefore be denied.

### 3.    Retaliation Claims

To allege a claim of retaliation under Title VII and § 1981, Robinson must allege that "'(1) [he] engaged in a protected activity, such as the filing of a complaint alleging racial discrimination, (2) [Chas Roberts] subjected [him] to an adverse employment action, and (3) a causal link exists between the protected activity and the adverse action.'" *Vasquez*, 2024 WL 4364147, at *6 (quoting *Manatt v. Bank of Am.*, 339 F.3d 792, 800 (9th Cir. 2003)).  Regarding the non-time-barred portions of the retaliation claims, Chas Roberts argues that Robinson has not alleged the requisite causal link between his protected activity—reporting discrimination to HR and his supervisors in 2018 and 2021—and the adverse employment action—the 2023 new commission contract and subsequent firing. (Doc. 28 at 7–8.)

To establish a causal connection between a protected activity and an adverse employment action, Robinson "may allege direct or circumstantial evidence from which causation can be inferred, such as an employer's pattern of antagonism following the protected conduct, or the temporal proximity of the protected activity and the adverse employment action." *Gage*, 707 F. Supp. 3d at 883 (cleaned up).  Temporal proximity, alone, is often insufficient to establish causation.  *See Kama v. Mayorkas*, 107 F.4th 1054, 1059–60 (9th Cir. 2024).  But neither is temporal proximity a requisite element of a retaliation claim.  *Porter v. Cal. Dep't of Corr.*, 419 F.3d 885, 895 (9th Cir. 2005).  Rather, the inquiry is "fact-specific and depends on both the degree of proximity and what, if any, other evidence supports" an inference of retaliation.  *See Kama*, 107 F.4th at 1059–60. When the protected and adverse events are not proximate, the plaintiff must allege facts explaining the delay or demonstrating a "pattern of antagonism following the protected conduct."  *Porter*, 383 F.3d at 895 (quotation marks omitted); *see also Pratt v. Hawai'i Dep't of Pub. Safety*, 308 F. Supp. 3d 1131, 1148 (D. Haw. 2018) (holding that a complaint did not support an inference of retaliation based on timing alone, where the delay between

protected activity and adverse action was over five months).

Here, Robinson fails to allege temporal proximity or any other facts supporting an inference of retaliation.  Robinson engaged in the alleged protected activity in 2018 and 2021.  (Doc. 21 at ¶¶ 24, 26–28.)  But the adverse employment action did not occur until 2023.  (*Id.* at ¶¶ 38, 49.)  A two-year period between the protected activity and the adverse action does not, without more, support an inference of retaliation.  *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) ("Action taken . . . 20 months later suggests, by itself, no causality at all.")*.*  And while Robinson argues he has alleged a "pattern of antagonism" he does not allege any such antagonism between 2021, when he last reported discrimination, and the 2023 new commission plan.  (*See generally* Doc. 21.)  Nor does he provide any facts explaining why Chas Roberts's retaliation would have been delayed.  *See Porter*, 419 F.3d at 895 (holding that plaintiff established prima facie case of retaliation where she provided "a valid reason for the delay between her alleged protected activities and the claimed adverse actions").  The complete absence of any allegations suggesting animus or antagonism for two years after Robinson engaged in a protected activity cannot support an inference of retaliation.

In his response, Robinson argues that he has stated a claim for retaliation based upon his objections to his supervisors about the new 2023 commission contract.  (Doc. 33 at 12.)  He argues that he was fired promptly after he complained of disparate treatment based on the new contract, and this temporal proximity is sufficient to infer retaliatory intent.  (*Id.*)  But Robinson's supervisors told him he would be terminated if he failed to sign the contract *before* Robinson "confronted [Chas Roberts] about the unfair treatment and disparate application of the 'new' commission structure."  (Doc. 21 at ¶¶ 49–50; *see also* Doc. 33 at 5 (confirming that only after Robinson was informed "that his failure to immediately sign the significantly worse commission contract would be considered a voluntary resignation" did Robinson "***then*** confront[] Defendant about the unfair treatment and the disparate impact the 'new' commission structure had on him" (emphasis added)).).  Because an act cannot be retaliatory if it was decided upon prior to the alleged protected conduct,

Robinson's argument fails. *See Breeden,* 532 U.S. at 272 (rejecting retaliation claim where adverse action occurred before employer was made aware of protected activity).

Robinson's claims for retaliation under Title VII and § 1981 will be dismissed. Because it is possible that Robinson could plead additional facts to support this claim, he will be given leave to amend.

### B. FMLA Interference Claim

Finally, Chas Roberts argues that Robinson has failed to allege an interference claim under the FMLA, because he has not "allege[d] that Chas Roberts interfered with his use of FMLA leave." (Doc. 28 at 10.)  Chas Roberts contends that any claim arising under the FMLA is properly styled as a retaliation claim, not an interference claim because the Complaint alleges that Robinson took FMLA leave. (*Id.*)  The Court disagrees.

"The FMLA creates two interrelated, substantive employee rights: first, the employee has a right to use a certain amount of leave for protected reasons, and second, the employee has a right to return to his or her job . . . after using protected leave." *Sanders v. City of Newport*, 657 F.3d 772, 777 (9th Cir. 2011) (cleaned up); *see also* 29 U.S.C. § 2612(a)(1).  There are two ways to protect these rights.  "Under § 2615(a)(1), it is 'unlawful for any employer to interfere with, restrain, or deny the exercise of' the substantive rights guaranteed by the FMLA." *Sanders*, 657 F.3d at 777 (quoting § 2615(a)(1)).  Claims arising under this section are called "interference claims." *Id.* "Under § 2615(a)(2) it is 'unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by [the FMLA].'" *Id.* (quoting 29 U.S.C. § 2615(a)(2)).  Claims arising under this section are called "retaliation claims." *Id.*

These theories for relief "are often confused." *Basset v. Truveta, Inc.*, 2025 WL 2443396, at *6 (D. Or. 2025) (quoting *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1124 (9th Cir. 2001)).  An interference claim is appropriate when an employer deprives an employee of one or more of their substantive rights under the FMLA. *Id.*  This includes the right to reinstatement after taking FMLA leave. *Sanders*, 657 F.3d at 778 (quoting

*Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 507 (6th Cir. 2006) for the proposition that "[t]he right to reinstatement . . . is the linchpin of the [interference] theory because 'the FMLA does not provide leave for leave's sake, but instead provides leave with an expectation that an employee will return to work after the leave ends'"). A retaliation claim, on the other hand, is appropriate when the employer acts "in response to (1) the employee having opposed a practice made unlawful under the FMLA . . . or (2) instituting or participating in FMLA proceedings." *Basset*, 2025 WL 2443396 at *6.

Robinson alleges that he took FMLA leave from May 2023 to September 25, 2023. (Doc. 21 at ¶¶ 35–37). He further alleges that when he returned to work, on September 25, 2023, he was presented with a new contract that substantially reduced his pay and then fired for refusing to sign that contract. (*Id.* at ¶¶ 37–52.) These allegations are sufficient to plead an FMLA interference claim, as they establish that Robinson took FMLA leave but was not reinstated into his prior position or an equivalent position. *See Sanders*, 657 F.3d at 778. Chas Roberts's motion to dismiss Robinson's FMLA interference claim will be denied.[6]

## IV.  CONCLUSION

For the reasons stated above, Chas Roberts's Motion to Dismiss Counts 1, 2, 3, 4, and 6 of the Third Amended Complaint, (Doc. 28), is granted in part and denied in part as follows:

**IT IS ORDERED** dismissing Robinson's § 1981 discrimination claims (First Cause of Action) based on (1) the 2016 racial slur and (2) the 2018 bonus structure change. Robinson's § 1981 discrimination claim based upon the 2023 new commission structure shall proceed.

**IT IS FURTHER ORDERED** dismissing Robinson's § 1981 retaliation claim (Second Cause of Action) with leave to amend.

**IT IS FURTHER ORDERED** dismissing Robinson's Title VII claims of disparate

---

[6]  Chas Roberts does not challenge Robinson's FMLA retaliation claim, so it will not be addressed in this order.

treatment (Third Cause of Action) based on (1) the 2016 racial slur and (2) the 2018 bonus structure change.  Robinson's Title VII disparate treatment claim based upon the 2023 new commission structure shall proceed.

**IT IS FURTHER ORDERED** dismissing Robinson's Title VII retaliation claim (Fourth Cause of Action) with leave to amend.

**IT IS FURTHER ORDERED** denying the motion with respect to Robinson's FMLA interference claim (Sixth Cause of Action).

**IT IS FURTHER ORDERED** that Robinson shall file any amended complaint by **March 20, 2026**.  If Robinson seeks to make any amendments beyond those permitted by this Order, he must seek leave to do so pursuant to Federal Rule of Civil Procedure 15(a). If no amended complaint is filed, Chas Roberts shall respond to the Third Amended Complaint, (Doc. 21), by no later than **April 3, 2026**.

Dated this 6th day of March, 2026.

Honorable Sharad H. Desai
United States District Judge